# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

LEX TECNICA, LTD.,

    Plaintiff

v.

VANGUARD FIELD STRATEGIES, LLC, et al.,

    Defendants

Case No.: 2:23-cv-00069-APG-EJY

**Order Denying Defendants' Motion to Dismiss**

[ECF No. 28]

Plaintiff Lex Tecnica, Ltd., as assignee of former plaintiff Community Schools Initiative (CSI), sues defendants Vanguard Field Strategies, LLC and Axiom LLC for allegedly defrauding CSI out of over $2.2 million in a failed signature gathering effort in support of a ballot initiative. Lex alleges that the defendants represented themselves as experts in the area who would gather signatures at a 70% validity rate so CSI could collect enough signatures to qualify its ballot initiative under Nevada law.  Lex contends that the defendants falsely reassured CSI that the signature gathering effort was going well when in fact it was failing to obtain valid signatures at anything approaching a 70% rate.  The Nevada Secretary of State found an average validity rate of 53.3%, and the measure failed.  Lex asserts claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, fraudulent inducement, fraudulent misrepresentation, negligent misrepresentation, and deceptive trade practices.

Vanguard and Axiom move to dismiss the claims for fraudulent inducement, fraudulent misrepresentation, negligent misrepresentation, and deceptive trade practices, arguing that these fraud-based claims are personal to CSI and not assignable to Lex.  Axiom moves to dismiss all claims against it on the grounds that this court lacks personal jurisdiction over Axiom.  Lex

responds that the claims are assignable because they seek only pecuniary loss. Alternatively, Lex asserts that CSI should be added back as a plaintiff if the claims are not assignable. Lex also argues that it has adequately established personal jurisdiction over Axiom. Alternatively, it requests jurisdictional discovery.

I deny the defendants' motion to dismiss the fraud-based claims, with leave to amend if Lex chooses to do so. I deny Axiom's motion to dismiss for lack of personal jurisdiction.

**I. FRAUD-BASED CLAIMS**

The defendants argue that CSI's assignment to Lex is "void ab initio" as to the fraud-based claims because fraud claims are personal to the one defrauded and cannot be assigned. The defendants contend that the assignment of these claims fails because Lex seeks damages to CSI's reputation; damages for years of preparatory work, wasted volunteer hours, and stalled political momentum; and punitive damages; all of which are personal to CSI.

Lex responds that the defendants are contradicting themselves because in Vanguard's first motion to dismiss, it argued that CSI lacked standing because it had assigned its rights to Lex and that these same claims were assignable under Nevada law. Additionally, Lex argues that the claims are assignable because Lex seeks only economic damages and does not seek non-economic damages for emotional distress or physical pain. Lex contends that its request for damages for years of preparatory work and volunteer time lost are concrete expenses. Additionally, Lex argues that CSI's goodwill is an intangible asset capable of being considered in a calculation of economic damages. Alternatively, Lex argues that if these claims were not assignable, then I should give leave for CSI to be added back as a plaintiff for these four claims.

The original and first amended complaints were brought by CSI "with rights assigned in trust to" Lex. ECF Nos. 1 at 2; 9 at 4. Vanguard moved to dismiss, arguing that CSI was not the

real party in interest because it had assigned all its rights to Lex. ECF No. 18 at 4.  Vanguard

also argued that the fraudulent inducement, fraudulent misrepresentation, and negligent

misrepresentation claims "each allege only pecuniary loss or economic damages, and therefore,

are also assignable." *Id.*  And it asserted that the deceptive practices claim was assignable. *Id.* at

5.  In response, Lex amended the complaint to drop CSI and substitute itself as the plaintiff in the

second amended complaint (SAC). ECF No. 21.

Vanguard (and Axiom) now take the opposite position and assert that these same claims

are not assignable.  In their reply brief, Vanguard and Axiom state that their position is not

contradictory because they were moving to dismiss a complaint filed by a different plaintiff.  But

Vanguard has taken a contradictory position by asserting that the same claims seeking the same

types of relief were both assignable and non-assignable. *See* ECF No. 9 at 22, 30, 33 (first

amended complaint also asserting damages based on reputational damage, loss of preparatory

work time, loss of volunteer time, stalled momentum, and punitive damages).  Despite this

conduct, I must determine whether the claims are assignable because standing is a non-waivable

requirement of Article III jurisdiction. *Renee v. Duncan*, 686 F.3d 1002, 1012 (9th Cir. 2012).

Nevada "prohibits the assignability of certain causes of action, regardless of how the

assignment is accomplished" because some claims "are personal in nature and meant to

recompense the injured party." *Reynolds v. Tufenkjian*, 461 P.3d 147, 150-52 (Nev. 2020).  To

determine whether a cause of action is assignable, Nevada law analyzes "the nature of the claim

to be assigned and . . . the public policy considerations that would be implicated if assignment

were permitted." *Id.* at 151-52 (quotation omitted).  Those policy considerations include whether

the type of damages are "non-economic losses such as physical pain and mental anguish" versus

claims more akin to recovery for loss of property. *Id.* at 153-54 (quoting *Maxwell v. Allstate Ins. Cos.*, 728 P.2d 812, 506-07 (Nev. 1986)).

For example, "claims for personal injury torts are not assignable," but "when a tort claim alleges purely pecuniary loss, . . . the claim may be assigned." *Id.* at 154.  Fraud and intentional misrepresentation claims are generally unassignable because they are personal to the one defrauded. *Id.* at 151 (citing *Prosky v. Clark*, 109 P. 793, 794 (Nev. 1910)).  In contrast, negligent misrepresentation claims are assignable because "Nevada law only recognizes negligent misrepresentation claims in the context of business transactions," so "the nature of such a claim is not to recover for a personal injury, but instead is more akin to a claim seeking recovery for a loss of property." *Id.* at 153.  "Claims alleging damages to property, rather than personal damages, are generally assignable." *Id.*  "Additionally, because a claim for negligent misrepresentation in Nevada can only be based on pecuniary loss, assigning such claims does not implicate . . . public policy concerns . . . because they do not include non-economic losses such as physical pain and mental anguish." *Id.* at 153-54 (quotation omitted).

In the SAC, Lex alleges that the defendants made false representations to CSI to induce it to enter into the contract and continued to falsely represent the success of the signature gathering effort to induce CSI to pay for more signature gathering.  CSI asserts it was damaged by paying over $2.2 million, its reputation was damaged, it lost "years in preparatory work for the initiative," "volunteer hours" were "wasted," and there was "stalled political momentum." ECF No. 21 at 28, 30.  Lex also seeks punitive damages. *Id.* at 31, 33.

The defendants argue that requesting damages for reputational harm, lost preparatory work, volunteer hours, stalled political momentum, and punitive damages are not assignable because they go beyond pecuniary loss and are personal to CSI.  Lex responds that all claims

1   were properly assigned because they seek only pecuniary damages involving economic damages

2   or lost property, not physical injury or mental anguish.  Lex notes that damages for lost

3   preparatory work and wasted volunteer hours can be quantified as expenses.  It also contends that

4   reputation is goodwill, which is an intangible asset that can be considered in an economic

5   damage calculation.

6        As an initial matter, under *Reynolds*, a negligent misrepresentation claim is assignable

7   because it is limited to pecuniary loss.  I therefore deny the defendants' motion to dismiss this

8   claim as being unassignable.

9        The fraud-based claims are also assignable because the claims' nature is akin to a

10  recovery for loss of property, and they do not implicate the public policy concerns at issue in

11  *Prosky* or *Maxwell*.  The request for reputational damage to a political action committee is a

12  pecuniary loss akin to goodwill of a business or damage to property, not a personal injury. *See*

13  *Ford v. Ford*, 782 P.2d 1304, 1308-09 (Nev. 1989) (assigning monetary value to a medical

14  practice's goodwill in the context of a divorce); *cf. Clark Cnty. Sch. Dist. v. Virtual Educ.*

15  *Software, Inc.*, 213 P.3d 496, 504 (Nev. 2009) (stating that under Nevada law, "where

16  communications concern the goods or services provided by a business entity, a plaintiff generally

17  seeks to redress injury to economic interests").[1]  Likewise damages for lost preparatory work and

18

---

19  [1] In their reply, the defendants argue that the Supreme Court of Nevada has recognized that
    damage to a business reputation is not an economic loss. ECF No. 35 at 3.  But the case they cite

20  supports the conclusion that damage to a business's reputation is property damage. *See Lopez v.*
    *Javier Corral, D.C.*, Nos. 51541, 51972, 367 P.3d 745, 2010 WL 5541115, at *3-4 (Nev. 2010)

21  (stating, in the context of the economic loss doctrine, that although "purely economic losses are
    not recoverable in tort absent personal injury or property damage," the doctrine did not apply in

22  that case because "the damages here were not solely for economic loss, as they include damages
    to Corral's reputation and business—his intangible property" (quotation omitted)).  Likewise, the

23  cases the defendants cite regarding reputational harm being personal are not persuasive because
    they involved either non-applicable statutory language or injury to individuals. *See Diaz v.*
    *Gates*, 380 F.3d 480, 485 (9th Cir. 2004) (concluding that injury to an individual's reputation did

wasted volunteer hours seek pecuniary damages for the value of that time, not for physical injuries or mental anguish.[2]

Finally, the defendants do not provide sufficient authority for me to conclude that Nevada would hold that where a claim is otherwise assignable, punitive damages are not also assignable. The original motion contains no law for this proposition.  In their reply, the defendants cite to Ninth Circuit law that the Jones Act is limited to "pecuniary" losses, and that punitive damages are non-pecuniary. *See Kopczynski v. The Jacqueline*, 742 F.2d 555, 560-61 (9th Cir. 1984). They also cite to a Ninth Circuit case for the general proposition that "punitive damages cannot be used to punish a defendant for the harms to a third party." *Riley v. Volkswagen Grp. of Am., Inc.*, 51 F.4th 896, 901 (9th Cir. 2022).  Even if I considered these cases and the related arguments raised for the first time in the reply,[3] they do not necessarily lead to the conclusion that Nevada would hold that every claim that seeks punitive damages is unassignable.  Other courts have held that that where a claim is otherwise assignable, the remedy of punitive damages for that claim is also assignable. *See, e.g.*, *Great Am. Ins. Co. v. Vasquez Marshall Architects*, No. 19-CV-1173-CAB-NLS, 2019 WL 4242481, at *3-4 (S.D. Cal. Sept. 6, 2019); *Diehl v. Starbucks Corp.*, No. 12-CV-2432-AJB-BGS, 2014 WL 295468, at *11-14 (S.D. Cal. Jan. 27, 2014) (and cases cited therein).  I do not definitively rule on this issue at this time because it has

---

not qualify as injury to business or property under the federal RICO statute), *on reh'g en banc*, 420 F.3d 897 (9th Cir. 2005); *Kelly v. Fleetwood Enters., Inc.*, 377 F.3d 1034, 1039 (9th Cir. 2004) (quoting an Oregon statute defining noneconomic damages to include injury to reputation).

[2] In their reply, the defendants argue that volunteer hours are not compensable because the workers were volunteers. ECF No. 35 at 3.  That may be an argument for why Lex cannot recover damages for these hours, but it does not explain why the claims are not assignable.

[3] *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

not been briefed by either side.  Instead, I deny the defendants' motion to dismiss on this ground, without prejudice to file another, properly supported motion.  However, if Lex wants to amend to add CSI as the plaintiff on the fraud-based claims that seek punitive damages for the avoidance of doubt, it has leave to do so.

## II.  PERSONAL JURISDICTION OVER AXIOM

Axiom moves to dismiss for lack of personal jurisdiction over it, arguing that the SAC's allegations related to Axiom do not support either general or specific personal jurisdiction. Axiom asserts that Vanguard's actions cannot be attributed to it to establish personal jurisdiction because the two are separate entities and the SAC does not adequately allege the two entities are alter egos.  Axiom also argues that its failure to register with the State of Nevada does not establish contacts with Nevada or prevent it from defending against this lawsuit.

Lex responds that it need not rely on alter ego allegations to support the exercise of personal jurisdiction over Axion.  Lex contends that Axiom is subject to this court's general personal jurisdiction because it is a nationally renowned political consulting firm with a history in Nevada, where it has conducted at least one campaign and has at least one employee.  Lex also argues that this court has specific personal jurisdiction over Axiom because it has plausibly alleged that Axiom purposefully directed its activities at Nevada, Lex's claims arise out of those contacts, and it would not be unreasonable for Axiom to be haled into court here.

"When no federal statute governs personal jurisdiction, the district court applies the law of the forum state." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).  Nevada's long-arm statute is co-extensive with federal standards, so I may exercise personal jurisdiction if doing so comports with federal constitutional due process. Nev. Rev. Stat. § 14.065(1); *Walden v. Fiore*, 571 U.S. 277, 283 (2014).  "For a court to exercise personal jurisdiction over a

1 nonresident defendant, that defendant must have at least minimum contacts with the relevant

2 forum such that the exercise of jurisdiction does not offend traditional notions of fair play and

3 substantial justice." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir.

4 2004) (quotation omitted).  "There are two forms of personal jurisdiction that a forum state may

5 exercise over a nonresident defendant—general jurisdiction and specific jurisdiction." *Boschetto*,

6 539 F.3d at 1016.

7       When a defendant moves to dismiss for lack of personal jurisdiction on the basis of

8 written materials rather than an evidentiary hearing, I must determine whether the plaintiff's

9 "pleadings and affidavits make a prima facie showing of personal jurisdiction." *Schwarzenegger*,

10 374 F.3d at 800 (quotation omitted).  In deciding whether a plaintiff has met its burden, I must

11 accept as true the uncontroverted allegations in its complaint and resolve conflicts in the

12 evidence in its favor. *Id.*

13      **A.  General Jurisdiction**

14      General personal jurisdiction allows a court to hear any claim against a defendant when

15 that defendant's "affiliations with the State are so continuous and systematic as to render [it]

16 essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014)

17 (quotation omitted).  That is satisfied as to an entity by showing that it is incorporated or formed

18 in the forum, has its principal place of business there, or is "otherwise at home" there. *Impossible*

19 *Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1086 (9th Cir. 2023) (quotation omitted).

20      The second amended complaint alleges that Vanguard and Axiom are Texas limited

21 liability companies. ECF No. 21 at 4.  There is no allegation that either company has its principal

22 place of business in Nevada.  The allegations that Axiom is "nationally renowned," and that

23

Vanguard is Axiom's "nationwide grassroots and field division" do not make Axiom at home in Nevada.

In Lex's response to the motion to dismiss, it argues that Axiom has conducted at least one political campaign in Nevada and that Roe, "through Axiom, is currently leading a national U.S. Presidential Campaign." ECF No. 32 at 11.  Lex also contends that Axiom has employees in Nevada, including a lobbyist identified on Axiom's website who tweeted election results while visiting Nevada in January 2023. *Id.* at 11-12.  However, being active in the state is not sufficient to support general personal jurisdiction. *See Daimler*, 571 U.S. at 137-38 (rejecting the argument that general jurisdiction extends to any state in which a corporation "engages in a substantial, continuous, and systematic course of business" (quotation omitted)).  Rather, Lex must show that Axiom's contacts with Nevada "are so continuous and systematic as to render [it] essentially at home" in Nevada. *Id.* at 139.  It has not done so.

## B.  Specific Jurisdiction

Specific jurisdiction depends on an "activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  "In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (quotation omitted).

Specific jurisdiction exists over Axiom (1) if it "performed some act or consummated some transaction by which it "purposefully directed its activit[ies] toward" Nevada or it "purposefully availed itself of the privilege of conducting business" in Nevada; (2) if Lex's claims "arise out of or result from" Axiom's "forum-related activities;" and (3) "if the exercise of jurisdiction is reasonable." *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021)

(quotation omitted).  Lex "bears the burden on the first two prongs," but if it meets that burden, then Axiom "must come forward with a compelling case that the exercise of jurisdiction would not be reasonable." *Id.* (quotation omitted).

### 1.  Purposeful Direction or Availment

Whether to use purposeful availment or purposeful direction for the first prong of the specific jurisdiction test "turns on the nature of the underlying claims." *Id.*  Generally, purposeful availment applies when the underlying claims are contractual and purposeful direction applies when the underlying claims are tortious in nature. *Id.*  Here, Lex asserts both contract and tort claims, so "both tests are relevant." *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020).  "At bottom, both purposeful availment and purposeful direction ask whether defendants have voluntarily derived some benefit from their interstate activities such that they will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Id.* (quotation omitted).  Consequently, "the first prong may be satisfied by purposeful availment, by purposeful direction, or by some combination thereof." *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1162 (9th Cir. 2023) (quotation omitted).

A "defendant purposefully directs its activities toward the forum when the defendant has (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Ayla, LLC*, 11 F.4th at 980 (quotation omitted).  An intentional act means "an intent to perform an actual, physical act in the real world . . . ." *Schwarzenegger*, 374 F.3d at 806.  "Express aiming requires more than the defendant's awareness that the plaintiff it is alleged to have harmed resides in or has strong ties to the forum, because the plaintiff cannot be the only link between the defendant and the forum."

1    *Ayla*, 11 F.4th at 980 (quotation omitted).  Rather, "something more," such as "conduct directly

2    targeting the forum is required to confer personal jurisdiction." *Id.* (simplified).

3           The SAC alleges that CSI hired Vanguard because the defendants "heavily emphasized

4    the reputation of Axiom and Jeff Roe . . . to create a perception that Vanguard was supported by

5    the full support, experience, and reputations of Axiom and Roe and others." ECF No. 21 at 9.

6    Vanguard and Axiom drafted the contract and Vanguard's vice president of sales, Scott Scheid,[4]

7    discussed it with CSI, "with insight from Axiom." *Id.*  After signing the contract, Scheid copied

8    an email to "Axiom leadership Tom Goodson and Joe Williams . . . indicating [Goodson and

9    Williams] would send the invoices." *Id.* at 9-10.[5]  According to the SAC, Goodson and Williams

10   "were involved in the contract and would be involved in the services going forward," which

11   "further reinforc[ed] Plaintiff's expectation and reasonable conclusion that it was contracting

12   with Axiom." *Id.* at 10.  Goodson contacted CSI to make payments. *Id.*  Additionally, "[Scheid]

13   represented to CSI that he would be in constant contact with Axiom, Roe, Williams, and

14   Goodson about the signature gathering effort." *Id.*  According to the SAC, Scheid continually

15   advised CSI that the signature gathering effort was going well, which induced CSI to continue to

16   request Vanguard to gather more signatures, and in turn pay the defendants for those efforts. *Id.*

17   at 12.  The invoices were sent by, and payment was sent to, Goodson and Williams. *Id.*

18

19

20   [4] The SAC sometimes refers to this person as Sheid.  I take the spelling from the email excerpted in the SAC. *See* ECF No. 21 at 10.

21   [5] In reply, the defendants argue that Williams and Goodson are actually Vanguard employees

22   and were acting as such in the emails to which the SAC refers, which the defendants assert is shown by their email addresses that are not displayed on the email pictured in the SAC. ECF No. 35 at 5.  The defendants contend I can consider the email because Lex incorporated it in the

23   SAC, but the defendants do not provide the actual email, instead providing only attorney argument to support this assertion, and only in reply.  I therefore take the SAC's allegations as true at this stage that Williams and Goodson were acting on Axiom's behalf.

Lex alleges that upon realizing that the signature gathering effort fell short of what was being represented, CSI asked for a refund. *Id.* at 19. According to the complaint, Scheid assured CSI "that a refund was forthcoming, that Defendants would 'take care of it,' and that one of Defendant's various senior leadership would contact [CSI] after Christmas." *Id.* at 19. CSI believed that this senior leadership was Roe or someone else at Axiom, as confirmed by a text message Scheid sent to CSI in which he stated that he "'filled in' Axiom leadership and needed to wait for several of these people . . . to get back from vacation." *Id.* at 19-20. Scheid also stated that Axiom President Rob Phillips would call CSI after Christmas and "take care of it." *Id.* at 19. However, Phillips did not call, nor did anyone else. *Id.* at 20.

Although a close call, Lex has alleged sufficient facts that Axiom engaged in intentional acts purposefully directed at Nevada causing harm that Axiom knew was likely to be suffered in Nevada. Taking the SAC's allegations and all reasonable inferences as true, Axiom's reputation was touted as the reason to hire Vanguard; Axiom assisted in drafting the contract or provided "insight" into that contract; Goodson and Williams, acting on Axiom's behalf, issued invoices, contacted CSI for payment, and received payment; Scheid represented that he was in constant contact with Axiom throughout the effort; and when the effort failed, Scheid advised CSI that Axiom leadership had to be informed and would take care of CSI's dissatisfaction with the contract's performance. Axiom thus directed its activities at Nevada by participating in the formation, performance, and receipt of payment for a signature gathering effort for a ballot initiative in Nevada that lasted for approximately six months. ECF No. 21 at 4-7, 11. Its contacts with the forum thus were not random, fortuitous, or attenuated, or based solely on CSI's location. The purpose of those contacts was to conduct a political signature gathering campaign in Nevada in support of a Nevada ballot initiative in exchange for payment. To the extent the

representations about Vanguard's performance were false, Axiom knew the harm would be felt in Nevada, both because that is where CSI would be defrauded and because that is where the ballot initiative would fail if not enough valid signatures were obtained.  Even if Lex has not sufficiently alleged purposeful direction, I would allow jurisdictional discovery, rather than dismiss at this stage. *See Laub v. United States Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (stating that a court "ordinarily" should grant jurisdictional discovery "where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary").

### 2.  Arise Out of Lex's Claims

Lex's claims arise out of Axiom's forum-related activities.  Lex alleges Vanguard breached the contract with which Axiom allegedly was assisting and for which Axiom was invoicing and receiving payment.  Lex also alleges that the defendants falsely represented their ability to perform the contract, as well as periodically falsely represented how the signature gathering was proceeding to induce Lex to continue making payments, that Scheid consulted with Axiom throughout, and that Axiom invoiced and received those payments.

### 3.  Exercise of Jurisdiction is Reasonable

Because Lex met its burden of making a prima facie showing on the first two factors, Axiom bears the burden of showing the exercise of jurisdiction would be unreasonable.  It did not argue that the exercise of jurisdiction would be unreasonable in its initial motion or in its reply.  Consequently, Axiom has not met its burden on this factor.

As a result, Lex has made a prima facie case of specific personal jurisdiction over Axiom. Even if it had not, I would grant jurisdictional discovery.  Consequently, I deny the defendants' motion to dismiss for lack of personal jurisdiction.

**III.  CONCLUSION**

I THEREFORE ORDER that the defendants' motion to dismiss **(ECF No. 28) is DENIED**.

I FURTHER ORDER that by February 16, 2024, plaintiff Lex Tecnica, Ltd. may file a third amended complaint to add Community Schools Initiative as a plaintiff if it chooses to do so.

DATED this 17th day of January, 2024.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE