# Exhibit EE (Plaintiffs' Responses to Interrogatories)

Zachary P. Takos, Esq., Nevada Bar No. 11293
Steven R. Hart, Esq., Nevada Bar No. 15418
TAKOS LAW GROUP, LTD.
10785 West Twain Avenue, Suite 224
Las Vegas, NV 89135
Telephone: 702.658.1900
Facsimile: 702.924.4422
Email: zach@takoslaw.com
        steven@takoslaw.com

Samuel Castor, Esq., Nevada Bar No. 11532
LEX TECNICA LTD
10161 Park Run Drive, Ste. 150
Las Vegas, Nevada 89145
sam@lextecnica.com

*Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| COMMUNITY SCHOOLS INITIATIVE, a Nevada Political Action Committee; and LEX TECNICA, LTD., a Nevada limited liability company, | Case No.:  2:23-cv-00069-APG-EJY |
| Plaintiffs, | |
| vs. | |
| VANGUARD FIELD STRATEGIES, LLC, a Texas limited liability company; AXIOM, LLC dba AXIOM STRATEGIES, a Texas limited liability company; DOES 1 through 100, inclusive; and ROE Business Entities 1 through 100, inclusive, | |
| Defendants. | |

## PLAINTIFF COMMUNITY SCHOOLS INITIATIVE'S ANSWERS TO DEFENDANT VANGUARD FIELD STRATEGIES, LLC'S FIRST SET OF INTERROGATORIES

TO:     Vanguard Field Strategies, LLC, Defendant.

TO:     A. Bradley Bodamer, Esq. (pro hac vice) of GRAVES GARRETT GREIM LLC,

        as its attorneys of record.

1

Plaintiff Community Schools Initiative, by and through their counsel of record, the law firm of LEX TECNICA LTD and TAKOS LAW GROUP, LTD, hereby answers Defendant Vanguard Field Strategies, LLC's First Set of Interrogatories to Plaintiff Community Schools Initiative, pursuant to Federal Rules of Civil Procedure, Rules 26 and 33.

**PRELIMINARY STATEMENT**

These answers are made solely for the purpose of, and in relation to, this action. Each answer is given subject to all appropriate objections including but not limited to objections as to confidence, relevance, materiality, propriety, and admissibility, which would require the exclusion of any statement contained herein if interrogatories were asked of, or any statement contained herein were made by a witness present and testifying in Court. All such objections and grounds therefore are reserved and may be interposed at the time of trial.

In addition, Plaintiff has not fully completed discovery and preparation for trial. The following answers are given without prejudice to Plaintiff's right to allege and/or produce evidence of any discovered fact or facts which Plaintiff may later obtain or recall. Plaintiff accordingly reserves the right to change any and all answers herein as additional facts are ascertained, analysis and contentions are made, and legal research is completed.

The answers contained herein are made in a good faith effort to supply as much factual information and as much specification of legal contention as is presently known and not subject to privilege, work product, and/or trade secret doctrine, but should in no way be to the prejudice of Plaintiff in relation to further discovery, research, or analysis, or contentions based thereupon, and in no way waive Plaintiff's rights and remedies under the Federal Rules of Civil Procedure.

///

///

2

**INTERROGATORIES**

**INTERROGATORY NO. 1:** Pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iii), please describe in detail each category of damages to which You claim to be entitled and state the amount for each category, identify the elements and explain the computation method for each category, and identify each person or entity with knowledge of the damages and their calculation.

**ANSWER**: Objection. This interrogatory is vague and ambiguous as to the word "elements", is compound, contains at least **five (5) subparts**, and as such constitutes at least **five (5) interrogatories**, and appears to call for legal conclusions. Plaintiff reserves the right to supplement this response including with testimony. Notwithstanding the forgoing, Plaintiff responds as follows, the complaint details the various legal theories, claims and damages, specifically noting:

| Category | Amounts | Elements | Computation | Persons/ Entities |
|---|---|---|---|---|
| **Breach of Contract** | **Total: $4,500,000\*:**<br>• $2,200,000 in contract payments to Axiom/Vanguard<br>• $500,000 for five years of donated and volunteered time and costs and expenses<br>• $500,000 in harmed donors who will likely not donate again.<br>• $150,000 in free marketing opportunity<br>• $150,000 in increase litigation costs with the teachers' union | Elements of breach of contract under Nevada law – see language in the First Cause of Action in the Third Amended Complaint | CSI paid Axiom/Vanguard ~$2.2mm and is entitled to compensatory damages exceeding $2.2mm, plus compensatory damages of $1.8mm and punitive damages plus costs and attorneys' fees. This does not include interest and historic annual inflation of at least 30% | CSI, Lex Tecnica, Samuel Castor, Mary Jane Stewart, Incompliance |

3

| | | | | |
|---|---|---|---|---|
| | • $1,000,000 in increased costs based on current bids to try again<br><br>* This does not include trebling, interest and historic ~30% annual inflation | | | |
| Breach of the Implied Covenant of Good Faith and Fair Dealing | **Total: $4,500,000*:**<br>• $2,200,000 in contract payments to Axiom/Vanguard<br>• $500,000 for five years of donated and volunteered time and costs and expenses<br>• $500,000 in harmed donors who will likely not donate again.<br>• $150,000 in free marketing opportunity<br>• $150,000 in increase litigation costs with the teachers' union<br>• $1,000,000 in increased costs based on current bids to try again<br>* This does not include trebling, interest and historic ~30% annual inflation | Elements of Breach of the Implied Covenant of Good Faith and Fair Dealing under Nevada law – see language in the Second Cause of Action in the Third Amended Complaint | CSI paid Axiom/Vanguard ~$2.2mm and is entitled to compensatory damages exceeding $2.2mm, plus compensatory damages of $1.8mm and punitive damages plus costs and attorneys' fees. This does not include interest and historic annual inflation of at least 30% | CSI, Lex Tecnica, Samuel Castor, Mary Jane Stewart, Incompliance |
| Unjust Enrichment | **Total: $2,200,000*:**<br>• $2,200,000 in contract payments to Axiom/Vanguard<br>* This does not include interest and | Elements of Unjust Enrichment under Nevada law – see language in the Third Cause of | CSI paid Axiom/Vanguard ~$2.2mm and is entitled to compensatory damages exceeding | CSI, Lex Tecnica, Samuel Castor, Mary Jane Stewart, |

4

| | | | | |
|---|---|---|---|---|
| | historic annual inflation of at least 30% | Action in the Third Amended Complaint | $2.2mm plus costs and attorneys' fees. This does not include interest and historic annual inflation of at least 30% | Incompliance |
| Fraudulent Inducement | **Total: $4,500,000*:**<br>• $2,200,000 in contract payments to Axiom/Vanguard<br>• $500,000 for five years of donated and volunteered time and costs and expenses<br>• $500,000 in harmed donors who will likely not donate again.<br>• $150,000 in free marketing opportunity<br>• $150,000 in increase litigation costs with the teachers' union<br>• $1,000,000 in increased costs based on current bids to try again<br>* This does not include trebling, interest and historic ~30% annual inflation. | Elements of Fraudulent Inducement under Nevada law – see language in the Fourth Cause of Action in the Fourth Amended Complaint | CSI paid Axiom/Vanguard ~$2.2mm and is entitled to compensatory damages exceeding $2.2mm, plus compensatory damages of $1.8mm and awarded punitive damages, plus costs and attorneys' fees. | CSI, Lex Tecnica, Samuel Castor, Mary Jane Stewart, Incompliance |
| Fraudulent Misrepresentation/ Fraud | **Total: $4,500,000*:**<br>• $2,200,000 in contract payments to Axiom/Vanguard<br>• $500,000 for five years of donated and volunteered time and costs and expenses | Elements of Fraudulent Misrepresentation/ Fraud under Nevada law – see language in the Fifth Cause of Action in the Fifth Amended Complaint | CSI paid Axiom/Vanguard ~$2.2mm and is entitled to compensatory damages exceeding $2.2mm, plus compensatory damages of $1.8mm and punitive damages | CSI, Lex Tecnica, Samuel Castor, Mary Jane Stewart, Incompliance |

|  |  |  |  |  |
|---|---|---|---|---|
|  | • $500,000 in harmed donors who will likely not donate again.<br>• $150,000 in free marketing opportunity<br>• $150,000 in increase litigation costs with the teachers' union<br>• $1,000,000 in increased costs based on current bids to try again<br>* This does not include trebling, interest and historic ~30% annual inflation |  | plus costs and attorneys' fees. This does not include interest and historic annual inflation of at least 30% |  |
| Negligent Misrepresentation | **Total: $4,500,000*:**<br>• $2,200,000 in contract payments to Axiom/Vanguard<br>• $500,000 for five years of donated and volunteered time and costs and expenses<br>• $500,000 in harmed donors who will likely not donate again.<br>• $150,000 in free marketing opportunity<br>• $150,000 in increase litigation costs with the teachers' union<br>• $1,000,000 in increased costs | Elements of Negligent Misrepresentation under Nevada law – see language in the Fifth Cause of Action in the Sixth Amended Complaint | CSI paid Axiom/Vanguard ~$2.2mm and is entitled to compensatory damages exceeding $2.2mm, plus compensatory damages of $1.8mm and punitive damages plus costs and attorneys' fees. This does not include interest and historic annual inflation of at least 30% | CSI, Lex Tecnica, Samuel Castor, Mary Jane Stewart, Incompliance |

6

| | | | | |
|---|---|---|---|---|
| | based on current bids to try again<br>* This does not include trebling, interest and historic ~30% annual inflation | | | |
| Deceptive Trade Practices | **Total: $4,500,000*:**<br>• $2,200,000 in contract payments to Axiom/Vanguard<br>• $500,000 for five years of donated and volunteered time and costs and expenses<br>• $500,000 in harmed donors who will likely not donate again.<br>• $150,000 in free marketing opportunity<br>• $150,000 in increase litigation costs with the teachers' union<br>• $1,000,000 in increased costs based on current bids to try again<br>* This does not include trebling, interest and historic ~30% annual inflation | Elements of Deceptive Trade Practices – see language in the Seventh Cause of Action in the Third Amended Complaint, citing NRS 41 and NRS 598 | CSI paid Axiom/Vanguard ~$2.2mm and is entitled to compensatory damages exceeding $2.2mm, plus compensatory damages of $1.8mm and punitive damages plus costs and attorneys' fees. This does not include interest and historic annual inflation of at least 30% | CSI, Lex Tecnica, Samuel Castor, Mary Jane Stewart, Incompliance |
| Offer of Judgment | Plaintiffs provided an offer of judgment to Defendants – and have incurred over $700,000 in fees to date. We calculate a $4.5mm damages award (which will be trebled) plus costs and | See the OOJs | Axiom/Vanguard previously rejected multiple Offers of Judgment in this matter. OOJs are a substantive law element, not procedural so Nevada law (not Federal) will | N/A |

7

| | | | |
|---|---|---|---|
| | fees in this suit putting the total damages award at more than $12mm plus fees and costs. | | apply. Nevada law is clear that "any party" can file an OOJ, and that multiple offers can be filed, and the earliest rejected offer starts the clock ticking on attorneys' fees for the prevailing party. *See* NRS 68(f)(2). We provided proof of the reasonableness of our attorneys' fees (<$850 an hour) (including a prior award for fees in a similar case in Federal Court) in an email on June 28, 2024 – to which Defense counsel responded they preferred to litigate this matter (rather than settle) as it would add to their "long career" | |

In addition to the payments to Axiom/Vanguard, CSI also incurred operating expenses and costs like those detailed on profits and loss statements as forth on PLF_RFP_RES000328 (printing costs, website costs, consulting fees, compliance fees, legal fees, salaries, etc.) which total more than $200,000. See also the costs detailed in Interrogatories No. 6 below regarding wasted volunteer hours exceeding $824,000. Given the foregoing, Plaintiffs calculate damages at more than $5,524,000, plus amounts reflected in Interrogatories No. 6 and 7, plus trebling, punitive damages, interest and carry, and costs and attorneys' fees as supported by the rejected Offers of Judgment provided to Defendants.

8

**INTERROGATORY NO. 2:** With respect to Plaintiff's contention in paragraph number 89 of the Third Amended Complaint that Your reputation suffered harm, please describe Your reputation before and after the signature gathering campaign, describe how the outcome of the campaign damaged Your reputation, and state the amount of monetary damages and how You calculated.

**ANSWER:**

This interrogatory is vague and ambiguous, is compound, contains at least **four (4) subparts**, and as such constitutes at least **four (4) interrogatories**, and appears to call for legal conclusions. Notwithstanding the forgoing, Plaintiff reserves the right to supplement this response including with additional testimony, but responds as follows:

See response to Interrogatory No. 1, as well as the Third Amended Complaint which details this, and deposition testimony was provided by Plaintiff's various witnesses (e.g. Samuel Castor, Dan Stewart, Mary Jane Stewart, Annalise Castor, Bob Sweetin) as to the effect of Axiom/Vanguard's unlawful acts had on the reputation of CSI and the ballot initiative from all CSI witnesses.

CSI was a legislative and lobbying effort more than five (5) years in the making. The initial language for the initiative (to allow cities to opt out of the county-based school district) was drafted in or around 2017, with the volunteer efforts of five (5) different attorneys the lead attorneys being Sam Castor and Bob Sweetin. The Nevada county-based school systems and effectiveness had long been criticized, but public opinion dramatically shifted in the wake of the COVID-19 pandemics and quarantines. Children's mental health plummeted, student and teacher abuse and violence rose, child suicides rose, academic performance plummeted with Nevada having the

9

worst ACT scores in the nation, and bi-partisan political support to change the school system was inevitable following the repeated school district failures during and after COVID.

As a result, CSI had board members from both Democrat and Republican parties and public support from multiple cities and every major chamber of commerce, including the Las Vegas Chamber of Commerce, the Latin Chamber of Commerce, the Black Caucus, the Asian Chamber of Commerce, and the cities of North Las Vegas and Las Vegas and Henderson. The CSI brand was a popular political topic given the failing schools, childhood suicides, and other traumas, and provided halo effect for politicians, and CSI was able attract board members from both political parties, including Commissioner Marylin Kirk-Patrick (D), City Councilman Daniel Stewart (R), Mesquite City Attorney and Mayoral Candidate Bob Sweetin (R), Mary Beth Scow (D) and others. Most uniquely, even the CCEA Teachers Union led by John Validerdita was *not* opposed to the CSI initiative. As a result, the CSI initiative was not opposed with litigation. The only opponent was the Clark County School District itself.

CSI was given various free radio and news spots, and ads, at a calculated cost of at least $150,000, per the detailed analysis of the cost of organic impressions versus paid for advertising is provided below in Interrogatory No. 7. It was anticipated (including by Axiom/Vanguard) that CSI would have no difficulty raising $3-5mm in additional funds once the initiative passed.

However, after the initiative failed due to Axiom/Vanguard's fraud, CSI's brand and image was irreparably tarnished as follows:

- Donors donated more than $500,000 in funds and will not be approachable again given the damage to the reputation, as the brand is now associated with signature fraud and failure due to Axiom/Vanguard's fraud. Similarly, many are unwilling to donate again given the fraud of Axiom/Vanguard and the stigma of failure, and of being defrauded.

10

-

- Although originally unopposed, the CCEA teacher's union has now indicated it will oppose and sue the CSI initiative which will cost CSI an estimated $150,000 to $200,000 in litigation costs, based on an estimated hourly rate of $650-$850 an hour and 200-250 hours of work to respond to an initiative matter.  Those costs are not unavoidable given Axiom/Vanguard's fraud and the wasted opportunity window.

- The only opponent of the CSI initiative at the time was CCSD, which by Nevada law is prohibited from opposing a political measure, and they were slow to oppose it given the element of surprise with it being a first time initiative effort, but now that it has been filed once before, the momentum and element of surprise are gone, CCSD has organized other opponents who will increase the cost of running the initiative again in 2026, from $3mm to $5mm in addition campaign opposition costs.

- Other potential donors who were on the fence will be less likely to donate to an initiative that has failed and was defrauded, as confidence in CSI's ability to properly use the funds has been damaged, and the potential funds to be raised was in the $3mm to $5mm range based on the cost of prior initiatives like the Energy Choice Initiative in 2016. The Energy Choice Initiative, also known as Question 3, was first filed in Nevada in 2016. It was a ballot measure aimed at amending the Nevada Constitution to establish an open, competitive retail electric energy market and prohibit the granting of monopolies and exclusive franchises for the generation of electricity. The combined spending from both sides was around $126.5 million.

- After the failure, the non-profit group "Communities in Schools" is now insisting that when we run the initiative again, we must pick another name forcing CSI to start all over with

11

the new branding costs foregoing the remaining branding good will and name recognition and sunk costs, and volunteer marketing and social media efforts.  The rebranding and messaging costs will be roughly $150,000.

- More than 7,629,028 impressions were tallied associating Axiom/Vanguard's fraud with CSI. For a detailed explanation of the repair cost for this disaster see Plaintiff's response to Interrogatory No. 7.

**INTERROGATORY NO. 3:** Please identify all current and former donors, endorsers, or supporters who previously donated money to You that have indicated their intent to no longer support CSI or a future Petition as a result of failing to qualify for the 2022 ballot. For each donor, endorser, or supporter, describe in detail the dates on which they donated, the amounts they donated, the dates on which or during which they promised to donate in the future, and the amounts they promised to donate in the future.

**ANSWER:** This interrogatory is vague and ambiguous, is compound, contains at least four (4) subparts, and as such constitutes at least **four (4) interrogatories**. Plaintiff reserves the right to supplement this response including with testimony. Notwithstanding the forgoing, Plaintiff responds as follows:

Each of the actual donors has been identified in the productions provided by CSI, namely profit and loss reports prepared by third party Incompliance and CSI's CPA, as well as those identified on PLF_RFP_RES000029-70, 156-178, 195-197, 223-231, 1160-80, 1242-64, etc.

Many of these donors indicated they would not donate again given the initiative's failure, and the fraud of Axiom/Vanguard, and CSI indicated they were ashamed to ask for more donations and would try and provide refunds, given Axiom/Vanguard fraud and failure. The conversations occurred in person or over the phone in the few weeks following the news of the failed initiative,

12

as the donors were personal acquaintances of the board members. Additionally, Sam and Annalise Castor, who donated most of the funds either personally through their family trust, or through their entities are unable to donate more funds because of Axiom/Vanguard's fraud.

**INTERROGATORY NO. 4:** Please identify each and every media article described in paragraphs 90 and 106. For each news article, identify the news agency and whether You or the other Plaintiff initiated contact with the news agency, sought contact with the news agency, or in any way instigated the article.

**ANSWER:** This interrogatory is vague and ambiguous as to what paragraphs of what document, is compound, contains at least four (4) subparts, and as such constitutes a**t least four (4) interrogatories (totaling 17 interrogatories to this point and counting)**. Plaintiff is willing to meet and confer on this and promptly supplement this response, but without further clarification Plaintiff is unable to answer this interrogatory. Plaintiff reserves the right to supplement this response including with testimony.

**INTERROGATORY NO. 5**: As to Your computation damages identified in paragraph 154 of the Third Amended Complaint related to "preparatory work for the initiative," please describe in detail the type of preparatory work, the names of all individuals who engaged in the preparatory work and when it was conducted, and the amount spent on the preparatory work.

**ANSWER:**

Objection, this interrogatory is vague and ambiguous, is compound, contains at least four (4) subparts, and as such constitutes at least **four (4) interrogatories (21 total thus far)**. Notwithstanding the foregoing, Plaintiff responds as follows: Please see Plaintiffs' response to Interrogatory No. 1 and No. 2 above and in No. 7, regarding the research, innovation and drafting

13

of the draft initiative and time donated over 5 years to the same by the Castors and others. Plaintiff reserves the right to supplement this response including with testimony.

**INTERROGATORY NO. 6:** As to Your computation of damages identified in paragraph 154 of the Third Amended Complaint related to "volunteer hours . . . wasted," please provide the names of the volunteers, describe the volunteer activities, and state when they occurred and the amount of hours spent.

**ANSWER:**

This interrogatory is vague and ambiguous, is compound, contains at least four (4) subparts, and as such constitutes at least **four (4) interrogatories (25 total thus far).** Notwithstanding the forgoing, Plaintiff responds as follows:

See response to Interrogatory No. 2, as well as deposition testimony provided on this topic. The following names will be provided confidentially, and may not be disclosed publicly to avoid retaliation/retribution by the Clark County School District against individuals who volunteered their time, talents and insight to the CSI effort totaling at least **$824,500** over the course of five years, as follows:

| Volunteer | Volunteer Activities | When Occurred | Hours Spent | Minimum Replacement Cost |
|---|---|---|---|---|
| Samuel Castor | Principal researcher, drafter, editor and lead collaborator of 43+ drafts of the initiative, work with lawyers, legal advice re-single subject limitations, constitutionality, statutory compliance, lobbying, litigation risks, meeting with board, strategy discussions on consensus building, fund raising, conflict mitigation, | 2018-2022 | 750+ hours over 5 years (with an hourly rate at $800-$850 an hour) | $600,000 |

14

| | | | | |
|---|---|---|---|---|
| | navigating the teachers' union and other opponent risks, meeting with potential donors, gathering bi-partisan support, meeting with chambers of commerce, multiple city council members with the City of Las Vegas, North Las Vegas Henderson, Boulder Mesquite, and other government groups, signature gathering, legal advice, policy considerations, legal review of contracts, services, lobbying efforts, marketing meetings, video production, grass roots promotion and networking and fundraising. | | | |
| Bob Sweetin | Co-drafter of 10+ drafts of the initiative, work with lawyers, legal advice re-single subject, lobbying, litigation risks, meeting with board, strategy discussions on consensus building, fund raising, conflict mitigation, navigating the teachers' union and other opponent risks, meeting with potential donors, gathering bi-partisan support, meeting with chambers of commerce, multiple city council members with the City of Las Vegas, North Las Vegas Henderson, Boulder Mesquite, and other government groups, signature gathering, legal advice, legal review of contracts, services, lobbying efforts, marketing meetings, video production, grass roots promotion | 2018-2022 | 50+ hours over 5 years (at $500 an hour) | $50,000 |

15

| | | | | |
|---|---|---|---|---|
| Annalise Castor | Initiative innovator, board member, board member recruiter, meeting with board, strategy discussions on consensus building, fund raising, conflict mitigation, navigating the teachers' union and other opponent risks, meeting with potential donors, gathering bi-partisan support, meeting with chambers of commerce, multiple city council members with the City of Las Vegas, North Las Vegas Henderson, Boulder Mesquite, and other government groups, signature gathering, lobbying efforts, marketing meetings, video production, grass roots promotion | 2018-2022 | 500+ hours over 5 years (at $100 an hour) | $50,000 |
| Mary Jane Stewart | Campaign manager, fund raising, conflict mitigation, navigating the teachers' union and other opponent risks, meeting with potential donors, gathering bi-partisan support, meeting with chambers of commerce, multiple city council members with the City of Las Vegas, North Las Vegas Henderson, Boulder Mesquite, and other government groups, signature gathering, legal advice, legal review of contracts, services, lobbying efforts, marketing meetings, video production, grass roots promotion | 2021-2022 | 50+ hours over 5 years (at $100 an hour) | $5,000 |

16

| | | | | |
|---|---|---|---|---|
| Dan Stewart | Board Chairman, board member, board member recruiter, meeting with board, strategy discussions on consensus building, fund raising, conflict mitigation, navigating the teachers' union and other opponent risks, meeting with potential donors, gathering bi-partisan support, meeting with chambers of commerce, multiple city council members with the City of Las Vegas, North Las Vegas Henderson, Boulder Mesquite, and other government groups, signature gathering, lobbying efforts, marketing meetings, video production, grass roots, city and statewide promotion and consensus building | 2021-2022 | 200+ hours (at $250 an hour) | $50,000 |
| John Guedry | Attending board, expert advisor, financial insight on school waste and fraud, fund raiser supporter, gathering bi-partisan support, meeting with chambers of commerce, multiple city council members with the City of Las Vegas, North Las Vegas Henderson, Boulder Mesquite, and other government groups, signature gathering, lobbying marketing meetings, video production, grass roots promotion | 2021-2022 | 100+ hours (at $250 an hour) | $25,000 |

17

| | | | | |
|---|---|---|---|---|
| Courtney Sweetin | Attending board, expert advisor, special needs advocate, fund raiser supporter, signature gathering, marketing meetings, video production, grass roots promotion | 2018-2022 | 75+ hours over five years (at $100 an hour) | $7,500 |
| Mary Beth Scow | Board member, attending board meetings, expert advisor, financial insight on school waste and fraud, fund raiser supporter, gathering bi-partisan support, meeting with chambers of commerce, multiple city council members with the City of Las Vegas, North Las Vegas Henderson, Boulder Mesquite, and other government groups, signature gathering, lobbying efforts, marketing meetings, video production, grass roots promotion | 2021-2022 | 75 hours (at $100 an hour) | $7,500 |
| Ava White (former CCSD CFO) | Expert advisor, financial insight on school waste and fraud, fund raiser supporter, gathering bi-partisan support | 2018-2020 | 30 hours (at $150 an hour) | $4,500 |
| Serafin Calvaso | Regular meetings with the CSI Board regarding North Las Vegas' interest in and support of CSI | 2021-2022 | 50 hours (at $150 an hour) | $7,500 |
| Bradley Mayer | Marketing and lobbying consultant, advised on bi-partisan support, coordinated efforts with Marylin Kirk Patrict, and Carolyn Goodman, mayor of Las Vegas | 2018-2022 | 100 hours over 4 years (at $150 an hour) | $15,000 |

18

| <5 Hour Volunteers | Signature gatherers, sign makers, event supporters, signature gathering party supporters | 2021-2022 | 50+ volunteers (at $25 an hour) | $2,500 |
|---|---|---|---|---|
| **TOTALS** | | | | **$824,500** |

Given the foregoing, Plaintiffs anticipate at least $824,500 in wasted volunteer time, cost and expense related damages. Plaintiff reserves the right to supplement this response including with testimony at trial.

**INTERROGATORY NO. 7:** As to Your computation of damages identified in paragraph 154 of the Third Amended Complaint related to "stalled political momentum CSI garnered," please describe the political momentum You had garnered, how that political momentum translated into fundraising or donations to CSI, and how You calculate the dollar amount for that alleged lost momentum.

**ANSWER**

This interrogatory is vague and ambiguous, is compound, contains at least three (3) subparts, and as such constitutes at least **three (3) interrogatories**. Moreover, this interrogatory exceeds the limit of 25 of interrogatories imposed by Federal Rules of Civil Procedure 33(a)(1) which states "Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts" and as such, Plaintiff is not obligated to answer these or any hereafter. Notwithstanding the forgoing and without waiting the objection and the ability to prevent use of the interrogatory at trial, Plaintiff responds as follows:

See response to Interrogatory No. 2, as well as deposition testimony provided on this topic. Additionally, see PLF_RFP_RES000194, which is a media report tracking 7,629,028 impressions

19

created with the news of the failure of the CSI initiative, prepared by consultants working on the initiative. This means 7,629,028 organic news impressions of the failure of the CSI initiative due to fraud were created in the wake of Axiom/Vanguard's fraud.

Plaintiff reserves the right to supplement this response including with testimony, but provides the following context regarding the damage caused by Axiom/Vaguard's fraud:

**Generally, organic impressions are more impactful (and more costly to secure or repair) because of the following factors:**

(i) Credibility and Trust: Organic impressions often come from content that is shared or found naturally, like news stories, which can build more trust and credibility with the potential supporters and the decided, and undecided audiences.

(ii) **Long-Term Value**: Good organic content like news articles can continue to generate impressions over time without additional costs.

(iii) **Engagement**: Organic content, especially when it goes viral like it did here for Nevada when it generated over 7mm views, is highly engaging, can lead to better interaction and community building, and alignment of political interest.

(iv) **Cost-Effective**: Once the content is created, there are no ongoing costs associated with organic impressions because the content has a long shelf life with organizations like news outlets and reporting sites.

(v) **Authenticity**: Organic content and impressions reach can be less predictable and is harder to scale compared to paid impressions, which makes difficult to replicate and more costly at a 3-5:1 cost ration compared to paid for costs.

(vi) **Time-Consuming**: Securing organic impressions often requires more (anywhere from 3-5:1 the cost) in investment of time and resources to create high-quality content and engage with the audience.

**As a result, organic impressions are more advantageous than paid for impressions because:**

(i) **Higher-Cost**: Paid impressions can become expensive, especially for highly competitive keywords or target audiences.

(ii) **Temporary**: Once the budget is exhausted, the impressions stop, making it less sustainable in the long run compared to organic reach.

(iii) **Ad Fatigue**: Audiences may become desensitized to ads, leading to reduced effectiveness over time.

Therefore, in the experience of CSI's Board members, consultants and advisors, and as understood to be the industry standard the impact of these harmful organic impressions caused by Axiom/Vanguard's fraud was more significant and longer lasting and cannot simply be repaired with paid for impressions because:

(i) **Brand Building**: Organic impressions are generally more impactful for long-term brand building and creating a loyal customer base.

(ii) **Cost Efficiency**: Organic impressions are more cost-efficient over the long term, while paid impressions provide faster but potentially costlier results.

(iii) **Engagement**: Organic content tends to drive higher engagement rates, as it is often perceived as more authentic compared to paid ads.

As a result of this impact, the cost of paying for impressions to counteract the negative impact (and lost momentum) of 7,629,028 organic impressions caused by Vanguard/Axiom's fraud, we need to consider the Cost Per Thousand Impressions (CPM) rate. As mentioned earlier, CPM

21

rates can vary, but a common range is $5 to $10 per thousand impressions. Given the potential effectiveness and required scale to effectuate a state wide initiative, we calculate a range of CPM rates and different ratios of paid to negative impressions, with a conservative 3:1 ratio ranging to overcome the 7,629,028 negative impressions * 3 = 22,887,084 paid impressions as follows:

- Lower Estimate (CPM = $5):
  - 22,887,084 / 1,000 * $5 = $114,435.42
- Upper Estimate (CPM = $10):
  - 22,887,084 / 1,000 * $10 = $228,870.84

And a more aggressive estimate at a 5:1 ratio to overcome 7,629,028 negative impressions * 5 = 38,145,140 paid impressions as follows:

- Lower Estimate (CPM = $5):
  - 38,145,140 / 1,000 * $5 = $190,725.70
- Upper Estimate (CPM = $10):
  - 38,145,140 / 1,000 * $10 = $381,451.40

Therefore, based on these calculations, the cost to pay for impressions to counteract 7,629,028 negative organic impressions would range **between $114,435.42 and $381,451.40**. This amount is in addition to the damage's calculation set for in Interrogatory No. 1. Plaintiff reserves the right to supplement this response including with testimony at trial.

**INTERROGATORY NO. 8:** Please describe the malicious or wanton conduct that forms the basis for Plaintiff's claim of punitive or exemplary damages in paragraphs 156 and 175 of the Third Amended Complaint.

/// 

22

**ANSWER:**

Plaintiff objects this interrogatory is vague and ambiguous and exceeds the limit of 25 of interrogatories imposed by Federal Rules of Civil Procedure 33(a)(1) which states "Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts" and as such, Plaintiff is not obligated to answer these or any hereafter. Notwithstanding the foregoing, Plaintiff notes that emails document that **Scott Shied lied – repeatedly – on behalf of Axiom and Vanguard**. He repeatedly told CSI that the validity rate was over 70% when he had just been told internally that the validity rate was below 50% or even below 40% at times. Vanguard/Axiom's lies induced CSI to pay over $2.2mm on monies to CSI and other vendors in support of the initiative. *See also* Sam Castor and Mary Jane's deposition testimonies about this topic. Plaintiff reserves the right to supplement this response including with testimony at trial.

**INTERROGATORY NO. 9:** Please state in detail each category of damages sought in the First Cause of Action, the claimed amount for each, and how calculated.

**ANSWER:**

Objection, this interrogatory is duplicative and exceeds the limit of 25 of interrogatories imposed by Federal Rules of Civil Procedure 33(a)(1) which states "Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts" and as such, Plaintiff is not obligated to answer these or any hereafter. Notwithstanding the forgoing and without waiting the objection and the ability to prevent use of the interrogatory at trial, Plaintiff responds as follows:

See answer to Interrogatory No. 1 – namely, compensatory, consequential, and punitive.

23

**INTERROGATORY NO. 10:** Please state in detail each category of damages sought in the Second Cause of Action, the claimed amount for each, and how calculated.

**ANSWER:**

Objection, this interrogatory is duplicative and this interrogatory exceeds the limit of 25 of interrogatories imposed by Federal Rules of Civil Procedure 33(a)(1) which states "Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts" and as such, Plaintiff is not obligated to answer these or any hereafter. Notwithstanding the forgoing and without waiting the objection and the ability to prevent use of the interrogatory at trial, Plaintiff responds as follows:

See answer to Interrogatory No. 1 – namely, compensatory.

**INTERROGATORY NO. 11:** Please state in detail each category of damages sought in the Third Cause of Action, the claimed amount for each, and how calculated.

**ANSWER:**

Objection, this interrogatory is duplicative and this interrogatory exceeds the limit of 25 of interrogatories imposed by Federal Rules of Civil Procedure 33(a)(1) which states "Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts" and as such, Plaintiff is not obligated to answer these or any hereafter. Notwithstanding the forgoing and without waiting the objection and the ability to prevent use of the interrogatory at trial, Plaintiff responds as follows:

See answer to Interrogatory No. 1 – namely, compensatory, consequential, and punitive.

**INTERROGATORY NO. 12:** Please state in detail each category of damages sought in the Fourth Cause of Action, the claimed amount for each, and how calculated.

24

**ANSWER:**

Objection, this interrogatory is duplicative and this interrogatory exceeds the limit of 25 of interrogatories imposed by Federal Rules of Civil Procedure 33(a)(1) which states "Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts" and as such, Plaintiff is not obligated to answer these or any hereafter. Notwithstanding the forgoing and without waiting the objection and the ability to prevent use of the interrogatory at trial, Plaintiff responds as follows:

See answer to Interrogatory No. 1 – namely, compensatory, consequential, and punitive.

**INTERROGATORY NO. 13:** Please state in detail each category of damages sought in the Fifth Cause of Action, the claimed amount for each, and how calculated.

**ANSWER:**

Objection, this interrogatory is duplicative and this interrogatory exceeds the limit of 25 of interrogatories imposed by Federal Rules of Civil Procedure 33(a)(1) which states "Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts" and as such, Plaintiff is not obligated to answer these or any hereafter. Notwithstanding the forgoing and without waiting the objection and the ability to prevent use of the interrogatory at trial, Plaintiff responds as follows:

See answer to Interrogatory No. 1 – namely, compensatory, consequential, and punitive.

**INTERROGATORY NO. 14:** Please state in detail each category of damages sought in the Sixth Cause of Action, the claimed amount for each, and how calculated.

**ANSWER:**

Objection, this interrogatory is duplicative and this interrogatory exceeds the limit of 25 of interrogatories imposed by Federal Rules of Civil Procedure 33(a)(1) which states "Unless

25

otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts" and as such, Plaintiff is not obligated to answer these or any hereafter. Notwithstanding the forgoing and without waiting the objection and the ability to prevent use of the interrogatory at trial, Plaintiff responds as follows:

See answer to Interrogatory No. 1 – namely, compensatory, consequential, and punitive.

**INTERROGATORY NO. 15:** Please state in detail each category of damages sought in the Seventh Cause of Action, the claimed amount for each, and how calculated.

**ANSWER:**

Objection, this interrogatory is duplicative and this interrogatory exceeds the limit of 25 of interrogatories imposed by Federal Rules of Civil Procedure 33(a)(1) which states "Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts" and as such, Plaintiff is not obligated to answer these or any hereafter. Notwithstanding the forgoing and without waiting the objection and the ability to prevent use of the interrogatory at trial, Plaintiff responds as follows:

See answer to Interrogatory No. 1 – namely, compensatory, consequential, and punitive.

DATED: July 10, 2024.

In respectful response

*/s/ Samuel Castor*
Sam Castor, Esq.,
LEX TECNICA, LTD.
10161 Park Run Drive
Las Vegas, Nevada 89145

Zachary P. Takos, Esq.,
Steven R. Hart, Esq.,
TAKOS LAW GROUP, LTD.
10785 West Twain Avenue, Suite 226
Las Vegas, Nevada 89135
*Attorneys for Plaintiff*

26

**<u>VERIFICATION</u>**

I, SAMUEL CASTOR, declare:

I am the author, and a legal advisor and board member for Community Schools Initiative. I certify and declare that I have read the foregoing **Plaintiff Community Schools Initiative's Answers to Defendant Vanguard Field Strategies, LLC's First Set of Interrogatories** and know its contents. I am informed and believe, and on that ground allege, that the matters stated therein are true and correct. I declare under penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct.

DATED: July 10, 2024

/s/ Samuel Castor
Samuel Castor

27

## CERTIFICATE OF SERVICE

I am 18 years of age or older, and not a party to this action. On the date below, I served the foregoing document(s), described as: **Plaintiff Community Schools Initiative's Answers to Defendant Vanguard Field Strategies, LLC's First Set of Interrogatories** as follows:

■ by emailing a copy of the foregoing document pursuant to Fed. R. Civ. P. 5(b)(E) to the following:

Jeffrey F. Barr, Esq. - barrj@ashcraftbarr.com
A. Bradley Bodamer - bbodamer@gravesgarrett.com
George R. Lewis - glewis@gravesgarrett.com
Trevor R. Waite - twaite@wrslawyers.com
Carolyn Bott - cbott@wrslawyers.com
Erika Alba - erika@woolseymorcom.com

DATED this 10th day of July, 2024.

*/s/ Michael Falater*
LEX TECNICA LTD

28