**1**

1          UNITED STATES DISTRICT COURT

2            DISTRICT OF NEVADA

3

4  COMMUNITY SCHOOLS              )
   INITIATIVE, et al.,           )  Case No. 2:23-cv-00069-APG-EJY
5                                 )
        Plaintiffs,              )  Las Vegas, Nevada
6                                 )  OCTOBER 1, 2024
        vs.                      )  Courtroom 3D
7                                 )
   VANGUARD FIELD STRATEGIES,    )  MOTION HEARING
8  L.L.C., et al.,               )
                                 )  C E R T I F I E D   C O P Y
9        Defendants.            )
                                 )

10

11  _____

12                  TRANSCRIPT OF PROCEEDINGS

13      BEFORE THE HONORABLE ELAYNA J. YOUCHAH

14         UNITED STATES MAGISTRATE JUDGE

15

16

17

18  DIGITALLY RECORDED:    Liberty Court Recorder (LCR)
                           11:02 - 11:40 A.M.
19
    RECORDED BY:           Elvia Garcia
20

21  TRANSCRIBED BY:        Judy K. Moore, CRR, RMR
                           Judy_Moore@nvd.uscourts.gov
22

23
    Proceedings recorded by electronic sound recording; transcript
24  produced by machine shorthand and computer-aided transcription.

25

2

1   APPEARANCES:

2   For the Plaintiffs:

3       **MR. ZACHARY P. TAKOS, ESQ.**
        TAKOS LAW GROUP, LTD.
4       10785 W. Twain Avenue, Suite 224
        Las Vegas, Nevada 89135

5

6   For the Defendants Vanguard and Axiom:

7       **MR. A. BRADLEY BODAMER, ESQ.**
        **MR. GEORGE R. LEWIS, ESQ.** (via Zoom)
8       GRAVES GARRETT, L.L.C.
        1100 Main Street, Suite 2700
9       Kansas City, Missouri 64105

10      and

11      **MR. JEFFREY F. BARR, ESQ.**
        ASHCRAFT BARR, L.L.P.
12      9205 West Russell Road, Suite 240
        Las Vegas, Nevada 89148

13

14

15

16                          * * *

17

18

19

20

21

22

23

24

25

Case 2:23-cv-00069-APG-EJY   Document 89   Filed 10/19/24   Page 3 of 30
*Transcribed by Digital Recording  2:23-cv-00069-APG-EJY  10/01/2024*

3

1    LAS VEGAS, NEVADA; OCTOBER 1, 2024; 11:02 - 11:40 A.M.

2                           --oOo--

3                   P R O C E E D I N G S

4          COURTROOM ADMINISTRATOR:  This is the time set in

5    the case of 23-cv-69-APG-EJY, Community Schools Initiative

6    versus Vanguard Field Strategies, L.L.C.

7          Plaintiff's counsel, please enter your appearance

8    for the record.

9          MR. TAKOS:  Good morning, Your Honor.  Zachary Takos

10   on behalf of the plaintiffs.

11         THE COURT:  Thank you.

12         COURTROOM ADMINISTRATOR:  Defendants, please enter

13   your appearance for the record.

14         MR. BARR:  Bradley Bodamer on behalf of defendant

15   Vanguard and Axiom.

16         MR. BODAMER:  Bradley Bodamer also on behalf of the

17   defendants.

18         THE COURT:  All right.  Thank you.

19         All right, gentlemen, I have read the motion, which

20   is a motion to compel discovery, ECF Number 73, as well as the

21   opposition, which is ECF Number 78.  I've also looked at a

22   variety of documents.  I don't think any of you have been

23   before me before, so let me just tell you I tend to read

24   absolutely everything.  I also was a civil practitioner for

25   over 25 years before I took the bench and have more discovery

Case 2:23-cv-00069-APG-EJY    Document 89    Filed 10/19/24    Page 4 of 30
*Transcribed by Digital Recording  2:23-cv-00069-APG-EJY  10/01/2024*

**4**

1  knowledge than I ever thought I would or probably cared to.  I

2  tell people, you could wake me up from anesthesia, don't ask me

3  the President, ask me, you know, what *relevance* means or

4  something like that.  I probably know.

5        So to begin with, I don't need any argument on the

6  timeliness of this motion.  While I understand why it was

7  raised, and that's fine, discovery closed on July 12th and the

8  motion was filed on August 2nd and the discussion about the

9  scheduling of the deposition of Tom Goodson continued until the

10  end of July.  I find the motion was timely.  And if you need or

11  feel the desire to make a record on that issue, you certainly

12  can, but I don't need argument on it.

13        I also reviewed the timeline of events for purposes

14  of determining the issue of diligence because, of course,

15  before the Court would really consider whether to grant the

16  motion, which in essence defendants say is a reopening of

17  discovery, it is to the extent that discovery is closed, but I

18  can give you a little bit more insight on my feeling on that.

19  There must be diligence, and the Court finds there is

20  sufficient diligence here to proceed and look at excusable

21  neglect, which I can also address in some parts, but I will

22  take argument on other.

23        I note that the first request for a deposition, if I

24  have my timeline right, for Mr. Goodson happened in 2023.  It

25  was, I believe, November 23rd of 2023.  It was a date defense

Case 2:23-cv-00069-APG-EJY   Document 89   Filed 10/19/24   Page 5 of 30
*Transcribed by Digital Recording  2:23-cv-00069-APG-EJY  10/01/2024*

5

1   counsel was not available because of its schedule.  And then

2   there were follow-up emails on December 14, 16, and 18, which I

3   have looked at.  And then there was a discussion about setting

4   his deposition on July -- excuse me -- on January 22nd.  Why

5   that was canceled may be in dispute, but that date was not set.

6         I recognize that between January and June there

7   doesn't appear to be discussion about -- specifically about

8   Mr. Goodson but substantial other discovery occurred, and

9   June 5th, which is a month before close of discovery, the

10  discussion about Mr. Goodson arises again.  And I've looked at

11  those exhibits as well.  And the discussion was really, I would

12  call it continuous.  While there are breaks in dates because

13  people are getting back to one another, the discussion begins

14  on June 5th and ends on July 23rd.  And between June 5th and

15  July 23rd, that is -- I should say that differently.

16        Starting on June 5th and before July 23rd and going

17  all the way back to December, there is never a mention in

18  anything that I have before me that counsel for defendant did

19  not represent Mr. Goodson or that Mr. Takos should not be going

20  through counsel for defendants for purposes of setting his

21  deposition, so this argument about Rule 45 subpoenas seems

22  disingenuous to me, since if Mr. Takos had gone to plaintiff or

23  Mr. Castor had gone about trying to set a deposition for

24  somebody you represented, the defendants represented, there

25  would have been a flurry of activity about how "You should have

1 been going through us as opposed to reaching out to Mr. Goodson

2 directly."  So I didn't find that a particularly compelling

3 argument.

4         I also note that defense counsel, understandably, we

5 have lives.  As much as our clients never believed we did, we

6 do have lives, and there were times when attempts were made to

7 set depositions when defense counsel was not available for one

8 reason or another, personal or professional.  And there doesn't

9 appear to be a difficulty on the part of plaintiff in

10 accommodating those needs.

11         There is some testy back-and-forth after defense

12 counsel filed a motion seeking extension of time, not their

13 first, for -- to submit a rebuttal expert, and, you know, I

14 understand people feel like, you know, what's good for the

15 goose is good for the gander, but it doesn't always work that

16 way in discovery.  It's not a -- you know, *an eye for an eye*

17 proposition.  At least it never was in the 25-plus years I did

18 it.  So I didn't really find that terribly compelling either.

19         The real question for me is, given that this is

20 looking at excusable neglect, that there's no imminent trial

21 date here and there won't be until motions for summary judgment

22 are decided and a JPTO is filed, there was diligence, which

23 I've already mentioned, that the deposition would not have come

24 as a surprise, the real question is just prejudice, whether

25 there's prejudice.  Given that the motions for summary judgment

1    have -- motion for summary judgment has been filed and it was

2    filed on the due date, I think the day before the due date, and

3    that was a date set by the Court, and while there could have

4    been a request to extend that date, I understand why there was

5    not if the parties were ready to file, filing is appropriate.

6           So the real question is whether taking Mr. Goodson's

7    deposition now is so prejudicial that it shouldn't occur.  And

8    that is what I really would like to hear the focus of the

9    argument to -- well, the argument to focus on, to say that

10   better.

11          I am -- I'll just mention that the discussion about

12   no legal authority to require a party to produce a former

13   employee came very late in this conversation.  Didn't find that

14   particularly compelling.  If Mr. Goodson at one point was

15   cooperating with defendant and now is not cooperating with

16   defendant so defendant could no longer control his appearance,

17   whereas at one time he was cooperating, I understand that, but

18   to sort of blame plaintiff for Mr. Goodson's change didn't sit

19   quite right with me.  You can explain that to me if you'd like.

20          It is plaintiff's motion, so I'd ask you to go ahead

21   and address the issue of prejudice first.  I know that defense

22   counsel did not point out that you didn't argue excusable

23   neglect in your motion to compel, but I have a wide latitude of

24   authority when it comes to discovery, even things that are not

25   officially presented to me.  The case law is replete with that.

Case 2:23-cv-00069-APG-EJY   Document 89   Filed 10/19/24   Page 8 of 30
*Transcribed by Digital Recording  2:23-cv-00069-APG-EJY  10/01/2024*

**8**

1  So I'm exercising that authority here.

2  　　　　If you'd like to go ahead, Mr. Takos.

3  　　　　MR. TAKOS:  Thank you, Your Honor.  Thank you very

4  much.  And thank you, more than anything, for really narrowing

5  the issue down.  And I'll just address the prejudice issue.

6  　　　　I think Your Honor has already mentioned, this is a

7  deposition that we have been seeking off and on, and for

8  different reasons we had to postpone that, but it is a

9  deposition that we've been seeking very early on.  And it came

10 as no surprise to defense counsel that we want to do that.  And

11 so it's not a surprise to them.  They're not prejudiced by any

12 sort of surprise.

13 　　　　And, in fact, as discovery went on, the later

14 depositions that we took closer to the close of discovery,

15 everyone kind of was mentioning in terms of certain issues in

16 the case that it was Tom Goodson who had the most information.

17 So not only did we identify that early on, but I think even

18 discovery has kind of funneled that issue down to Mr. Goodson.

19 　　　　And then, finally, the only other thing I would say

20 is, as Your Honor pointed out, the motions for summary judgment

21 have been fully briefed.  You know, God bless this Court, but

22 it takes a long time to get a motion for summary judgment

23 granted.  And I think we all understand that.  And so because

24 of that, it seems to me that this is the perfect time to take

25 one deposition of one individual, and there would be no

Case 2:23-cv-00069-APG-EJY   Document 89   Filed 10/19/24   Page 9 of 30
*Transcribed by Digital Recording  2:23-cv-00069-APG-EJY  10/01/2024*

9

1  prejudice to the defendants for letting us do that.  Thank you.

2          THE COURT:  Thank you.

3          All right.  Before I hear from defendants, I note

4  that there's somebody on video that didn't make an appearance,

5  and I just don't know who this gentleman is or why he's here.

6  And it's fine that he's here, but if you wouldn't mind...

7          MR. BODAMER:  Yes, Your Honor.  That is George

8  Lewis.  He's also with my law firm Graves Garrett.  He's back

9  in Kansas City.  Again, I understand -- I appreciate the Court

10  allowing us to appear remote, but, again, not knowing exactly

11  what to expect and having not appeared in this Court, I thought

12  it was worth the time to come out here.

13          THE COURT:  Well, I appreciate you being here.  No

14  problem.  Very good.  So are you arguing on behalf of

15  defendant, or is it --

16          MR. BODAMER:  If permissible, yes, ma'am.

17          THE COURT:  All right.  Please go ahead.

18          MR. BODAMER:  All right.  And, again, you are,

19  obviously, very well familiar with the record here, but what

20  we're struggling with, before I get to the prejudice argument,

21  again, the discovery closed on July 12th and summary judgment

22  motions were filed on August 12th, I think you communicated,

23  and they've been fully briefed as of September -- I'm sorry.

24  Thank you.  -- as of September 17th.  And what plaintiffs are

25  asking for is for Vanguard to produce a former employee who is

1  a resident of Houston, Texas, and he's asking basically for

2  this Court to compel us to do that, again, a non-party.

3        Mr. Goodson is not a party to this.  And, yes, it's

4  true that back in December when they noticed up Mr. Goodson, we

5  did agree to make him available.  And we did make him available

6  to be deposed in January.  We came out here and produced three

7  of our other witnesses, and then Mr. Takos decided that he did

8  not want to go forward with Mr. Shied, who was the Vanguard

9  employee who was kind of the primary contact with CSI, and did

10 not want to take the deposition of Mr. Goodson.

11       And then it went silent, literally, for five months.

12 And then on June 5th and again on June 17th, Mr. Goodson's name

13 came back in, but again he was asking for seven different

14 witnesses, including a 30(b)(6) witness, and Mr. Goodson was

15 just one of those.  And then we continued this record, I'm sure

16 you're familiar with, we kind of went back and forth on that,

17 and then Mr. Goodson really fell off the list.  I mean, he

18 just -- we weren't even talking about Mr. Goodson until,

19 frankly, after discovery was closed.

20       And the issue at that time was they had, late in the

21 game, submitted a 30(b)(6) -- notice to take a 30(b)(6) or a

22 corporate representative deposition, which despite doing that,

23 I think four days before discovery closed, we agreed to produce

24 someone to respond to that 30(b)(6) deposition.  And we were

25 prepared to do so.

1            And, again, it wasn't until after discovery closed
2    that I get on the phone with Mr. Castor and Mr. Takos and they
3    said, "Well, forget the 30(b)(6).  We now want Tom Goodson."
4    And I said, "Well, he's no longer employed."  All right?
5            THE COURT:  When did he become unemployed by the
6    company?
7            MR. BODAMER:  I'm sorry.  When did --
8            THE COURT:  When did he stop being employed by the
9    company?  Before December?
10            MR. BODAMER:  Actually, I don't -- I don't know the
11    answer to that, but I will acknowledge that I do not believe --
12    although I didn't realize or remember this, he was not an
13    employee back in January of 2024 when we agreed to produce him.
14            THE COURT:  So the fact that he's not an employee in
15    July doesn't really mean anything.  And I'll just point out
16    that the emails -- yes, the emails start June 5th.  There's a
17    June 10th email where Mr. Goodson's name comes up.  There's a
18    June 17th email where his name comes up.  So for -- in the
19    matter of 12 days, three emails back and forth between the
20    parties, Tom, Tom, Tom.  So this is all a month before, and at
21    no point in that time did you say he wasn't an employee and "We
22    can't produce him.  Issue a subpoena."  It isn't until
23    July 23rd that you say that.
24            MR. BODAMER:  Well, first of all, July 17th was the
25    last time they asked for him until after the close of

1  discovery.  I'm sorry.  June 17th was the last they --

2          THE COURT:  But you never gave them a date and you

3  didn't say on that day, or at any day before the 23rd of July,

4  more than a month later, after the close of discovery, "You

5  must subpoena him."

6          Is Mr. -- is any opposing counsel supposed to intuit

7  that you want them to seek a deposition through Rule 45 instead

8  of going through counsel?

9          MR. BODAMER:  Well, no, that was not the thinking.

10  The thinking was, we agreed to do a 30(b)(6) and we agreed to

11  produce two other witnesses.  One was our rebuttal expert, and

12  the other was the HR person.  We agreed to do that after the

13  close of discovery, but there was no talk in that time, again,

14  about Goodson until after we had taken those depositions.  And

15  that's when I was talking with Mr. Takos.  He came to Kansas

16  City for those depositions, and we said, "Well, we need to have

17  a discussion, then, about this 30(b)(6)."

18          And then Mr. Castor and Mr. Takos get on the line

19  with me the following week and say, "Well, forget the 30(b)(6).

20  We want Tom Goodson."  So it had been over a month since his

21  name had been broached as a -- since June 17th until, what,

22  July 18th that they came back and said, "Oh, no, no 30(b)(6).

23  We want Mr. Takos (sic)."  What I said was, "We will make sure

24  we have someone prepared to address the question" --

25          THE COURT:  Yeah, you don't get to control who they

1   want to depose, right?  That's clear.  You get to control who's

2   identified as the 30(b)(6).  That, you do.

3          MR. BODAMER:  Correct.

4          THE COURT:  But if they want to depose Mr. Goodson,

5   you don't get to say, "No, you can't depose him.  You have to

6   depose our 30(b)(6)," any more than they could say, "You don't

7   get to depose our 30(b)(6).  You have to depose so and so."

8   Works both ways, right?  The opposing party doesn't get to

9   control who the other party deposes, with the exception of a

10  30(b)(6), unless it's an APACS and you do a motion, you know,

11  for protective order, that sort of thing, which didn't happen

12  here.

13         MR. BODAMER:  Right.  No, I understand your point

14  there.  And it's not that we were trying to control who they

15  were going to depose, but the issue does come up, though, about

16  excusable neglect or whatever -- I can't remember the term now.

17         THE COURT:  It is excusable neglect.

18         MR. BODAMER:  Yeah, excusable neglect of, you

19  know -- there should be some shared responsibility for

20  whatever, of waiting until after the close of discovery to say,

21  "Oh, we want Tom Goodson."

22         Now, Your Honor understands, he was disclosed in our

23  initial disclosures.

24         THE COURT:  Right.

25         MR. BODAMER:  All right?  Including what his role

Case 2:23-cv-00069-APG-EJY   Document 89   Filed 10/19/24   Page 14 of 30
Transcribed by Digital Recording  2:23-cv-00069-APG-EJY  10/01/2024

**14**

1  was.  We produced hundreds, if not thousands, of documents

2  already.  There's no question about what Mr. Goodson's role was

3  in this, and yet they stood down until, again, after the --

4          THE COURT:  Why in June did you not -- on June 5th

5  when -- a month before the close of discovery, five weeks,

6  actually, before the close of discovery, which is close but not

7  unusual for people to seek depositions through the end of

8  discovery --

9          MR. BODAMER:  Oh, I understand.

10          THE COURT:  Okay.  So did you not say, "He is no

11  longer under our control.  You need to issue a Rule 45 subpoena

12  if you want to depose him"?

13          MR. BODAMER:  No, we did not do that --

14          THE COURT:  No, no.  Why not?

15          MR. BODAMER:  Well, because what we were doing at

16  that time was checking availability of witnesses.

17          THE COURT:  Did that include Mr. Goodson?

18          MR. BODAMER:  At that point in time, no, because,

19  again, he was no longer on the list --

20          THE COURT:  But he is on June 5th, sir.  That's what

21  you're missing.  He's on the list on June 5th, on June 17th, on

22  June 18th.  He's on the list.  Did you check his availability

23  at that time?

24          MR. BODAMER:  I don't remember that.  I don't

25  remember that.

Case 2:23-cv-00069-APG-EJY   Document 89   Filed 10/19/24   Page 15 of 30
Transcribed by Digital Recording  2:23-cv-00069-APG-EJY  10/01/2024

15

1    THE COURT:  All right.  Fair enough.

2    MR. BODAMER:  But, again, I don't -- I'm not saying

3 that we did, because, again, I don't think, in our mind, that

4 he was still on the list.

5    THE COURT:  So on June 17th when he says, "Tom in

6 person," he, Mr. Takos, says, "Tom in person in Houston

7 July 8th-9" and you write back on the 18th, "We'll check with

8 folks, but as you can see, your schedule is problematic," you

9 don't see anything on the 18th that says, "Mr. Goodson is not

10 under our control.  Mr. Goodson is a former employee.  You have

11 to issue a Rule 45."

12    So on June 18th, you said -- I'm not sure if it's

13 you, sir, but -- Brad, yes.  You said, "We'll check with

14 folks."  This is a quote.  "But as you can see, your schedule

15 is problematic."  And Mr. Takos writes back the same day, "Why

16 don't we agree to take these depositions after the close of

17 discovery," and you write back, "Will not be producing anyone

18 next week, but we'll check with witnesses for other

19 availability dates."  That's June 19th.

20    And on June 19th, Mr. Takos -- this is when the two

21 of you get into your little back-and-forth about he didn't

22 approve -- Mr. Takos didn't approve your two-week extension,

23 and so that created a problem for you, perhaps with your

24 client, meaning they felt that one failure to agree deserved

25 another failure to agree.  And that's June 19th.  It's not --

Case 2:23-cv-00069-APG-EJY   Document 89   Filed 10/19/24   Page 16 of 30
*Transcribed by Digital Recording  2:23-cv-00069-APG-EJY  10/01/2024*

**16**

1  and you're taking depositions then at the beginning of July,

2  after discovery has closed, because you've agreed.

3          And then he raises again, "What about Tom?"  And

4  it's on July 23rd that you -- this is what you're not answering

5  for me:  You have from June 5th to July 23rd.  That's 48 days,

6  approximately, 43 days if I'm doing my math, approximately 43

7  days, right?  Six weeks.  You do not mention that he's no

8  longer under your control at anytime during that period or tell

9  Mr. Takos, "If you want to depose him before the close of

10 discovery, issue a Rule 45 subpoena," clear to the end.

11         MR. BODAMER:  Your Honor, they issued a Rule 45

12 subpoena back in December of '23, as well as a notice to us.

13 Now, they delivered it through us.  I don't think there was a

14 question in the plaintiff's mind as to whether Mr. Goodson was

15 still an employee --

16         THE COURT:  Okay.

17         MR. BODAMER:  -- of the company.  So here's --

18 here's the fundamental issue, in my mind:

19         THE COURT:  Okay.

20         MR. BODAMER:  How can we compel him -- how can this

21 Court --

22         THE COURT:  You can't compel -- if you're telling me

23 you have no control over him and you're not his counsel, you

24 can't compel him.  Are you his counsel or aren't you his

25 counsel?

1          MR. BODAMER:  Only as a former -- only in the sense

2   as -- what is it, the *Palmer vs. Pioneer* case or whatever --

3          THE COURT:  Right.  So if you're his counsel for

4   purposes of the deposition because he falls, in your opinion,

5   under the standard that Nevada has set, which is an odd

6   standard, but it is what it is, right?  We've lived with it for

7   a lot of years.  None of us particularly care for it.  So we --

8   you know, it is the standard.

9          If you are his counsel, then you can control his

10  appearance.  If you're not his counsel, then Mr. Takos doesn't

11  have to consult with you, can issue the Rule 45 subpoena and

12  take his deposition.  You can show up at the deposition and

13  say, "I've been retained for purposes of the deposition."  He

14  can object.  You can figure that out at the time.  That's not

15  before me.  But either -- either you're in control of the

16  witness and he's your client and you can compel him, or he's

17  not your client, in which case I agree, then Mr. Takos has to

18  go out and issue a Rule 45 subpoena, get a process server, can

19  serve you with the document but doesn't consult with you and

20  just goes out and serves the man with the date.

21          MR. BODAMER:  As a former employee that could give

22  binding evidence or testimony on behalf of his former employer,

23  then yes, I think as counsel for Vanguard and Axiom --

24          THE COURT:  I would think you'd want to be.

25          MR. BODAMER:  I would agree.  That, in my mind

1  anyway, is not the same as being able to control the witness to

2  the point of saying, "You need to give this deposition."

3  That's -- no, we don't have that kind of control.

4           THE COURT:  All right.  Then I'm going to let Mr.

5  Takos issue a Rule 45 subpoena.  That's -- I mean, that's it.

6  You know, this -- my concern here, my biggest concern is, how

7  does this impact Judge Gordon and the motion for summary

8  judgment, right?  Having practiced in California briefly many

9  years ago when there were no computer filings and you still ran

10 down to the Clerk's Office before 4:00 because they closed the

11 door, I -- you know, I appreciate timing very much.

12          Judge Gordon is highly unlikely to get to this

13 motion until, I would say probably early next year, so if the

14 deposition takes place and only this deposition and no motion

15 to amend, which isn't before me, and no other depositions, I'm

16 ruling on nothing else but Mr. Goodson's deposition today, if

17 that deposition were to take place let's say before

18 Thanksgiving, right, and you can supplement your motions for

19 summary judgment, it's not going to delay the case because

20 Mr. -- because Judge Gordon isn't going to look at this until

21 the beginning of next year anyway.  So I don't find delay,

22 substantial delay, which can be prejudicial as sufficient here.

23 And I don't know what other prejudice would arise.

24          MR. BODAMER:  The fact that the motion is fully

25 briefed, and then once the deposition's been taken, I guess we

1   have to anticipate, regardless of how it comes out, that there

2   may be a need --

3          THE COURT:  Right.  I'm saying, so I give you time

4   to supplement.  Right.  Right.  So I give you time -- I can

5   order that.  I know that Judge Gordon -- you know, different

6   judges, each one of us has (indiscernible), but I know that

7   Judge Gordon would not -- would expect me to provide you that

8   opportunity.  And because I think that can happen before he

9   would look at the motion anyway, I don't see the prejudice that

10  would arise to you.

11         If I thought that he was reading those motions now

12  and making some preliminary decisions and was in the middle of

13  putting together whatever he'd be putting together, because I

14  have no idea, we don't talk about those kinds of things in the

15  Court, then I could understand prejudice.  But because I think

16  this can happen before the motion for summary judgment would

17  take place, I don't know what prejudice arises to you.  It's

18  one deposition that was originally scheduled in December.

19         I recognize the break between January and June, but

20  it comes up again five weeks before the close of discovery, and

21  my read of the interaction is that it was reasonable for

22  plaintiffs to believe that you were coordinating that

23  deposition until your statement on July 23rd that you were not.

24  That's the problem.

25         MR. BODAMER:  I take issue -- I mean, of course I

1 don't agree that that's -- that that's the way it played out.

2         THE COURT:  Is there something you can point me to?

3 I'm happy to -- I printed out the emails, you know, so I've

4 read them and have them before me.  I'm happy to hand them to

5 you if you think there's something I'm misreading.

6         MR. BODAMER:  Well, I'm sure you've read them, too.

7 The idea that I was asking, tell me what authority you have,

8 talking to the plaintiffs --

9         THE COURT:  On July 23rd.

10         MR. BODAMER:  Tell me what authority you have to

11 compel us to produce a former employee that we don't have

12 control over.

13         THE COURT:  Because up until that point, you had

14 been coordinating the date with him.

15         MR. BODAMER:  Well --

16         THE COURT:  So if you're telling me you can't compel

17 him, I'll agree with you.  That's fine.

18         MR. BODAMER:  Judge, I'm actually a cooperative

19 lawyer.  All right?

20         THE COURT:  You seem like it.

21         MR. BODAMER:  I think even -- well, I think even in

22 the record you can see we weren't trying to take hard and fast

23 rules.  And, yes, I pointed out the fact that they -- they took

24 issue with a two-week extension on an expert rebuttal report

25 that had no impact on any other deadline in the case.  And,

 1  yes, I reminded them, you know, that --

 2          THE COURT:  That's fine.

 3          MR. BODAMER:  Because as Your Honor knows, you ended

 4  up entering an order allowing us to do that --

 5          THE COURT:  I did.

 6          MR. BODAMER:  -- but saying, "No more extensions."

 7  I mean, you were clear on that.  And so, you know, it wasn't

 8  the motivation for this.  It's just, because we don't control

 9  him, I just can't make any promises there.  Again, I would be

10  cooperative in the sense of trying to talk with Tom Goodson and

11  say, "Look, here's the situation we're in," but frankly, the

12  safest route would probably be get a subpoena issued for him.

13          Now, I can check and come back, if you'd like,

14  but --

15          THE COURT:  That's not necessary.

16          MR. BODAMER:  -- frankly, the subpoena has to issue

17  out of Texas as well.

18          THE COURT:  Yeah, but you can issue that from here.

19          MR. BODAMER:  Well, no, no, I know.  No, I know.

20          THE COURT:  And they get a process server in Houston

21  and they go out and they serve him.  I mean, it's -- I'm

22  giving -- I understand you're frustrated, I do, I understand.

23  And I don't think there was any conduct here intentional to do

24  something.  I think that what you were thinking and what comes

25  across in emails are not identical.  Won't be the first time,

Case 2:23-cv-00069-APG-EJY   Document 89   Filed 10/19/24   Page 22 of 30
Transcribed by Digital Recording  2:23-cv-00069-APG-EJY  10/01/2024

22

1   won't be the last, right?  Nobody had mentioned to me until you

2   did here that a subpoena was issued in December.  That's a good

3   piece of information.  But it still went through you, which

4   you've said.

5           MR. BODAMER:  Yes, it did.

6           THE COURT:  So it appears that there was a period of

7   time when you had some influence, whatever it was, over Mr.

8   Goodson to obtain his cooperation on obtaining a date and now

9   you don't have that same level of influence.

10          MR. BODAMER:  We don't.  Time has passed.

11          THE COURT:  Right.  I get it.  That's fine.  He

12  said, "No more."  And if he didn't want to cooperate with you,

13  you can't force him to do that.

14          On the other hand, when the subpoena is served,

15  you're going to want to be his counsel.  And you can assert

16  that at the time, but I'm going -- I'm going to create a

17  timeline in which this has to occur.

18          MR. BODAMER:  Okay.

19          THE COURT:  And set a briefing schedule so that no

20  matter what Mr. Goodson says, good, bad, or indifferent for the

21  parties, you are free to supplement the motions for summary

22  judgment to add that evidence, as is appropriate for any of the

23  issues that are presented for decision in that fashion so that

24  nobody is prejudiced.  And absent some other prejudice, which

25  that was the prejudice I was concerned about, because Mr. Takos

1  is going to have to travel, he's going to have to spend the

2  money, he's going to have to pay the process server.

3         I don't know if your firm has anybody in Texas.  If

4  you all want to agree to do it on video, you can, right?  Rules

5  allow that.  But if you want to be there in person, that's up

6  to you.  I'll leave that to you.

7         But we're going to set the deposition because I

8  just -- there's just no -- there's not a sufficient

9  demonstration of prejudice to outweigh the importance of this

10  deposition.

11         I do also understand that there was the 30(b)(6) and

12  the decision was to forego 30(b)(6) and reach Mr. Goodson.

13  That's not lost on me.  Should they have decided that earlier?

14  Perfect world, yes.  Did they decide it before the close of

15  discovery?  Yes.  I was always a defense lawyer, I was never on

16  the plaintiff's side, so I understand the frustration.  I also

17  know what I had to do very often to accommodate the plaintiffs.

18  So it's not uncommon.  This is not that uncommon.

19         Is there anything else you want to tell me?

20         MR. BODAMER:  I don't think so.  Thank you.

21         THE COURT:  I appreciate it, sir.

22         Anything you need to tell me, Mr. Takos?

23         MR. TAKOS:  No, Your Honor.  Just thank you.

24         THE COURT:  All right.  So the motion is granted, to

25  the extent that plaintiffs are given the opportunity to serve a

1  Rule 45 subpoena on Mr. Goodson for deposition.  The service --

2  the subpoena, the issuing of the subpoena, the service of the

3  subpoena and the date for the deposition must all occur before

4  or no later than, I'm going to say November 14th because the

5  next week is Thanksgiving week.  People have lots of things

6  planned during those kinds of weeks, including potentially the

7  witness, and people travel on the Friday before, so that's why

8  I've picked November 14th.

9       If, Mr. Takos, you are having difficulty serving Mr.

10  Goodson, which I hope you do not, I know nothing about the man,

11  so I'm not suggesting he will be uncooperative.  I'm just

12  saying, don't delay bringing that either to defense counsel or

13  to the Court so that there may be some assistance offered in

14  getting service accomplished, however that is, whatever

15  discussion occurs.  I can't -- I can't foresee that now, I

16  don't know exactly, but what I'm trying to do is prevent this

17  from pushing into December when people get very busy towards

18  the -- you know, it's like August in France, I say, the end of

19  December and beginning of January in the U.S.

20       MR. TAKOS:  Sure.

21       THE COURT:  I'd rather be in France in August, but I

22  don't get that choice.  So I -- so, you know, that's what I'm

23  really trying to avoid.  So I am ordering you, to use a Supreme

24  Court phrase, all deliberate speed in getting this man served

25  and the deposition set.

Case 2:23-cv-00069-APG-EJY   Document 89   Filed 10/19/24   Page 25 of 30
Transcribed by Digital Recording  2:23-cv-00069-APG-EJY  10/01/2024

25

1      MR. TAKOS:  Perfect.

2      THE COURT:  Before November 14th.  Presuming that it

3  will take 30 days to get the transcript, that means that it

4  will probably be somewhere around December 13th to 16th, that's

5  a Friday to a Monday, before you get the transcript.  It could

6  be sooner, but, of course, the court reporter will also have a

7  Thanksgiving holiday in there.  So I would like -- you know, I

8  would like the supplement --

9      I'm sorry.  Tell me who -- Mr. Takos, who filed

10  motions for summary judgment?  Are there cross motions pending?

11      MR. TAKOS:  There are cross motions pending.

12      THE COURT:  Okay.  I looked, but I didn't remember.

13  So you each have motions pending.  So does it make sense --

14  I'll ask your opinions from each of you -- for each of you to

15  file a supplement and response in reply?  Do you want to do --

16  you know, presumably, Mr. Takos would be looking to use Mr.

17  Goodson's testimony to somehow assist him in this case.  That's

18  what I anticipate.  Or does it make sense to have Mr. Takos

19  file a supplement and you to have the opposition to oppose?

20      I see that your co-counsel is saying cross -- cross

21  supplements.

22      MR. BODAMER:  I defer to --

23      THE COURT:  Okay.  That's fine.  But I want to limit

24  the number of pages.  We're not rearguing, right?  We're just

25  arguing whatever the supplement is that he provides.  So less

1  than ten pages for fact summary of whatever Mr. -- I'm just

2  making sure because they're speaking to each other.  So ten

3  pages or less, fact summary of whatever it is --

4           MR. BODAMER:  Ten pages.

5           THE COURT:  -- and then argument.  Right.  That is

6  the supplement.  The same number of pages for opposition.  Five

7  pages for reply.  Okay?

8           MR. TAKOS:  And, Your Honor, just one thing, if I

9  may point out?

10           THE COURT:  Yes.

11           MR. TAKOS:  So there are -- actually, defendants

12  filed separate motions for summary judgment, so just --

13           THE COURT:  One supplement, however it applies to

14  all the arguments.

15           MR. BODAMER:  I think on this particular issue that

16  Mr. Goodson might be most relevant to would probably be on the

17  Vanguard motion that flows into the subject matter of whether,

18  in fact --

19           THE COURT:  It was the 70 percent.

20           MR. BODAMER:  -- there were misrepresentations and

21  fraud and that sort of thing.  So I think that's fine.

22           THE COURT:  Okay.  And so it's one --

23           (Indiscernible crosstalk.)

24           MR. BODAMER:  -- incorporates that, I mean, because

25  we already incorporated the Vanguard argument in the --

1    THE COURT:  Yeah.  You know, typically -- and Judge

2  Gordon is a stickler for local rules -- you can't incorporate

3  prior argument, but in this case what I would -- I would say is

4  simply refer very clearly to page and lines that you are

5  referring to so that he can find it very easily so that -- and

6  you can put in a footnote that the Court ordered a limited

7  number of pages and suggested this methodology in this

8  particular case.  All right?  Not for all cases.

9    So -- yeah, so if -- is it unreasonable, gentlemen,

10  to ask that the supplements be filed by January 6th?  That's

11  the Monday after New Year's.  So New Year's is Wednesday, the

12  1st.  I don't know if anybody has any trips planned.  I don't

13  go anywhere, so...  I seem to be here a lot.  Is that too soon?

14    MR. TAKOS:  We always go out of town.  I know we'll

15  be gone for a couple of weeks around the Christmas, New Year's

16  break.  A little extra cushion would not be objected to.

17    THE COURT:  And I suspect the 13th is going to be --

18  is that Martin Luther King Day?  So, yeah, it puts me to the

19  14th of January.  I'm going to give you until the 10th.

20    MR. TAKOS:  Okay.  Thank you.

21    THE COURT:  The 10th for the supplements, the

22  oppositions on the 20th, and the replies on the 27th.  Ten,

23  ten, and five pages.

24    MR. TAKOS:  Thank you, Your Honor.

25    MR. BARR:  Your Honor, just a point of

1  clarification.  Jeffrey Barr on behalf of defendants.

2         COURTROOM ADMINISTRATOR:  Can you speak into the

3  microphone?

4         MR. BARR:  I'm sorry.  Jeffrey Barr on behalf of the

5  defendants.  Just a point of clarification.  While I've

6  motioned supplements and argued supplements, I just want to

7  make it clear that the supplements are optional, we don't have

8  to file a supplement?

9         THE COURT:  That's correct.

10         MR. BARR:  But we could file an opposition to

11  whatever supplement gets --

12         THE COURT:  That's correct.

13         MR. BARR:  So if there's something great, we

14  could -- that's helpful for defendants, we could file our own

15  supplement; if not, we can wait and see what Mr. Takos provides

16  and we can just file an opposition?

17         THE COURT:  Absolutely.

18         MR. BARR:  Okay.

19         THE COURT:  Not mandatory.  Optional.  For both

20  parties.  If you don't want to supplement, you don't have to

21  supplement.  That's fine.  If neither party supplements for

22  some reason, I would file a notice with the Court just so that

23  Judge Gordon knows that he is not to expect them.

24         And this is for this deposition only, no other --

25  the discovery is not opened for any other purpose at this time.

Case 2:23-cv-00069-APG-EJY   Document 89   Filed 10/19/24   Page 29 of 30
*Transcribed by Digital Recording  2:23-cv-00069-APG-EJY  10/01/2024*

**29**

1  Any other request to reopen discovery or a motion to amend

2  would have to be filed separately and considered separately.

3          Any other questions so the -- so as stated on the

4  record.  And the transcript is the order of the Court.  The

5  motion is granted as stated but not as a motion to compel; just

6  as to the ability to take the deposition.

7          MR. TAKOS:  Understood.  Thank you, Your Honor.

8          MR. BODAMER:  Will the Court issue a written order?

9          THE COURT:  No.  It is the written transcript.

10         MR. BODAMER:  Not even a minute order?

11         THE COURT:  The minute order says the transcript of

12  the proceeding is the order of the Court, and it says the

13  motion is granted to the extent stated on the record.

14         MR. BARR:  Understood.

15         THE COURT:  All right.  Yes.  That's all we do.

16  Otherwise, you'd be waiting another month, and I didn't think

17  that would be very helpful to you or to Judge Gordon.  So

18  that's why I set this for a hearing after I got a chance to

19  read through it all.  Some of the delay, of course, is mine.

20         MR. TAKOS:  Thank you very much, your Honor.  We

21  appreciate your time.

22         THE COURT:  Anything else on behalf of the

23  defendants?

24         MR. BODAMER:  Thank you for reading the

25  (indiscernible.)

1          THE COURT:  I read everything.  I do read

2    everything.

3          MR. BODAMER:  I told Jeff, I said, "It's a lot of

4    paper."

5          THE COURT:  It is, but I do try to read everything

6    to make sure I really understand.  And I think I -- I got most

7    of it here.  I know I'm not living the case, which I understand

8    as well.

9          MR. BODAMER:  No.  I appreciate it.  Thank you very

10   much.

11          THE COURT:  All right.  With that, we're adjourned.

12   Thank you, everyone.

13          (Proceedings concluded at 11:40 a.m.)

14                    --oOo--

15      I, Judy K. Moore, a court-appointed transcriber, certify

16   that the foregoing is a correct transcript transcribed from the

17   official electronic sound recording of the proceedings in the

18   above-entitled matter.

19

20   Date:  October 19, 2024

21

22                    /s/ Judy K. Moore_____

23                    Judy K. Moore, CRR, RMR
                     Official Court Reporter
24                    United States District Court
                     District of Nevada
25